Thank you. Please call the first case. We should do it like Springfield. Let's call the first case, Viacom Outdoor v. Donald Green. Counsel, you may proceed. Good morning, Your Honors. May it please the Court. Jeff Goldberg on behalf of the appellant, Viacom Outdoor. Your Honors, we believe that the circuit court erred in reversing the initial commission decision, which had sustained an arbitration decision, which had found that Section 11 of the Workers' Compensation Act was applicable to the instant case. Section 11 permits employers to engage in recreational activity for the benefit of their employees. And Section 11, I believe, has to be afforded protection from being whittled away by attacks, so to speak, on exceptions. And I think this is a perfect example. This was, in fact, a charity event. It was a bowling event. I think by any definition, the bowling event had nothing to do with the work and business purpose of Viacom Outdoor. So this was truly a recreational event for all the employees. Was it a recreational bowling event for charity? Was it the bowling that means it's not recreational? Or what are you saying? I'm saying that the bowling event itself, we have to start with the actual activity, was a recreational event. And I would even argue that engaging in a charitable event can be deemed a recreational event. Section 11 gives us parameters. It gives us some examples. And then it states not to be limited. So it's not precluded by just simply the classic softball event and hot dog sale, you know, outside some park or other place outside of the employer's site. What Section 11, I believe, is broad enough to capture and permit employers to be afforded this protection. And I think it's very important that this protection be afforded because in this particular instance, and this is where I think this is distinguishable from perhaps another charitable event, which could, in fact, maybe be deemed to be just solely a business purpose, that in this event, there were no customers that were present. This was not promoted. There is a reference by Petitioner's Council, by Kramer, that there were some ads that were, you know, that had received some awards. If we look carefully at that document, that's not Viacom Community Day, and that was not this beehive activity with the bowling event. Does the case turn on the nature of the activity, or does the case turn on whether or not the claimant, the employee, volunteers or is ordered or assigned? I think the case turns on, well, in the first instance, it turns on if the employee volunteered and or was assigned. And I think that clearly was, it would be to overturn the commission decision, you would have to use the standard of a manifest wait. And I think there was overwhelming evidence that supported that this was truly a voluntary event. Right. But if it were to find that the employee basically was ordered to participate in an activity, recreational, charitable or not, that would work against the employer, would it not? I agree. And if it was, in fact, the case, which is not in this instance, if it was, in fact, the case, that you were Why this was strictly voluntary, in your opinion, versus something that was basically mandated by the employer? Sure. First, let's start with what Ms. Kramer herself knew. She admitted and Petitioner's Counsel was allowed, the arbitrator went out of his way to give this a full, to vet this fully. He ordered me to bring in documents that was never ordered by Petitioner's Counsel showing all these memorandums. But the fact is, Ms. Kramer testified that the only document she remembers was a document said that, by the way, we're going to have a charitable event. She herself, Ms. Kramer, testified that her bosses did not tell her she had to go. She felt it was implied. None of her bosses told her or directed her to go. Correct. I have that clearly cited. None of her bosses directed her. None of them ordered her. And she only had recollection of one memorandum, even though it turns out there were some other memorandums set out. But let's look at that other memorandum. There is a list. It literally states, will you attend or will you not attend? It's clearly, you know, 50-50. And there wasn't anything in there that said, you know, we're looking for you. You know, there's no implication that if you don't attend, something, there would be a repercussion. And I think what we did in what I proved at the hearing was with the office manager that five people did not attend out of the total of 35, 36 employees. And out of those five, two were promoted. I apologize. Maybe one was promoted. And two remained and were still on staff at that time doing what they did all the way back at the time of this original event. And others went on to other companies. And there was no repercussion to the people who didn't attend. I think the arbitrator himself clarified that the people who did not attend weren't disabled or some other obvious reason why they didn't attend. They didn't attend because they didn't want to. But they didn't get the afternoon off, did they? Pardon? They didn't get the afternoon off, did they? No. No, they had to be there at the, what does Viacom do? Well, this particular entity of CBS, Viacom Outdoor, is kind of what it seems to be, are the signs that you see along the highway, outdoor billboards. It's basically outdoor advertising, display advertising. And they sell and they own these properties. And they rent that. I understand. They're an outdoor advertiser. So the five who didn't go stayed in the office doing whatever their normal workday activities would be. Correct. And the office manager testified that they could avail themselves of any other right. What makes this event different than a recreational event? Is it because there's a charitable component to it? I argue that it doesn't make it any different. And particularly in this charitable event, there was nothing proven that established that this was a business purpose. If, for example, and this could be different, if Viacom took this and then promoted it throughout the United States or a local jurisdiction, then you might be arguing, oh, they're taking this event and they're converting it into some type of business activity. But there was no proof of that. And there was no evidence. And I said, it's just speculative. It's just as likely to infer that. And admittedly, it's a charitable event. And if a corporation helps a charity, it's good. I suppose someone could say that's good business. But we see in this Gooden case that they had team building, that they were going to promote and tout their best employees. And that goodwill is not sufficient to remove the imposition of Section 11 rights when you have a recreational event. What we have here is exactly the same thing. There was no business purpose to this other than that inference that, well, gee, they're being a good corporate citizen. And I think that's what the circuit court seemed to hang their hat on and cites, unfortunately, a Pennsylvania case, which I think is not applicable because we have a direct statute. Did you argue the case before the circuit court? Yes, I did. Did you cite the Gooden case to the circuit court? Yes, I did, in my brief. And what was the ruling? In fact, I kind of vociferously argued when I could tell that the judge was going to rule against me. And I basically stated that the Gooden case is applicable because of that goodwill not being sufficient to preclude the imposition of Section 11. And then in his order, he states it's undisputed that this was a business purpose. I don't know how he reached that conclusion or that inference. And I think, you know, there may be a case before this Court someday where that could be the situation. And I think then it would be – it wouldn't even be a Section 11 case. It would just simply be taking some type of recreational event and converting it to some business purpose where it's advertised, it's promoted, it's used to show benefits to the company. Here we don't have that. But I do believe that the Gooden case should be followed through in this case, and that just that goodwill that we just kind of implied is not sufficient to take us out of that recreational activity, which was abominable. Counsel, in terms of the standard of review, you argue a manifest weight standard. Your opponent argues a de novo standard. What are the reasonable inferences that you believe can be drawn from the facts that – or that the facts are capable of different inferences to be drawn from in order to support it being a manifest weight standard here? Okay. I believe the reasonable inferences are simply that there is absolutely no fact that we have, one, in terms of her – whether this was a voluntary event, I think we have sufficient fact that she just felt that she had to go, but we have overt testimony that no one was ordering or assigning or compelling her to go with direct order. So that issue about the voluntary nature of this event I think was clearly established. People who remained back at the office, no repercussion to them. Two, in terms of the goodwill, the benefit to the company, I believe, again, that there – you know, the one document cited in here is not even applicable. He's talking about advertising related to some other events that had nothing to do with this Viacom Community Day, and that there's no reference by – you know, if we had a business expert that said, well, they would have an increase in business, they would have some type of corporate benefit, we don't have that at all. So the inference is we're just speculating because it's just as likely that this goodwill – this is just simply goodwill because we know it's a charitable event. And so in answer to your question, there aren't facts. And so it would be against the manifest weight to find these – to pull these inferences from facts that were never presented in this particular case supporting a business purpose. Thank you, Your Honor. Thank you. Thank you, Counsel.  Good morning. May it please the Court. Mr. Goldberg, my name is Paul Coggle, and I represent Donna Kramer. First of all, this case is a – the standard of review here is de novo for two reasons. One, we have a statutory interpretation, namely interpretation of Section 11 that this Court has to rule upon. Number two, there's no relevant fact that's in dispute. We even agree that she wasn't explicitly ordered to attend. We agree. In fact, Mr. Goldberg and I agree that on remand the nature of the permanency award was appropriate. We agree on every fact. So you're saying her participation was voluntary? Pardon? Her participation was voluntary, you're saying? Absolutely not. They – You said you agree that this wasn't – The facts are – the facts are not disputed.  However, they put a whole lot of pressure on her to attend. Going so far, Judge, is to have a contest with a prize awarded for the highest percentage of participation. If you look at these numbers here, 31 out of – Ms. Anderson testified that 31 out of 34 people attended. Actually, I realized when I went back and looked at her testimony, it's actually higher than that. It was 34 because there was two people. She didn't count when she testified. So because of the number of people that attended, we are to infer that she was ordered or assigned to attend. I think what you have to do is look at the totality of everything. And in this case, the bowling was not the purpose of the event. The purpose of the event – look at the name of it. It wasn't Employee Recreation Day. It was VIA Community Day. It was an opportunity for this company to curry favor for various reasons, all contained in the documents with the AIDS awareness. I'm assuming that's true. It was for a business-related purpose. Are you saying whether or not she voluntarily participates or whether or not she's ordered or assigned makes no difference? That's not what I'm saying. I'm saying the facts are not disputed. So as it relates to – Why do you say the facts are not disputed? Anderson testified that the employees simply were not required to attend. Her testimony was if they didn't want to attend, it would work. She said that the documents indicate that the employee was continuously told that we're looking – I mean, they literally put a bounty on the head of every employee by announcing a prize to the market with the biggest participation here. So while not explicit, her participation was implied, which was totally consistent with what she said. Basically, she was pressured. It was like – it was like similar to when I was in the Air Force and my flight commander came down and said, hey, Lieutenant Coghlan, we need somebody to work the snack bar this afternoon. It was that type of volunteering. It was the boss telling somebody, hey, we'd like you to attend this thing. We need some volunteers to attend this. There's an implicit hint there that it's voluntary. Plus, that's only part – that's only part of the analysis under JUUL T. That's one of the three analyses, whether or not they were pressured to attend. The other two parts are what was the extent the employer organized the event for their benefit. Here, 100 percent. 100 percent. In fact, not even this employer – this direction came from the home office. This went out to every single facility. So are we to assume that all – that every single Viacom facility in the entire country, on this day, all of the employees volunteered directly at all at the same time? Even if you were to assume that the facts are undisputed, whether or not they lead to the conclusion or inference that it was obligatory versus voluntary, those are reasonable inferences to be drawn from the facts, right? I agree. And I think you're right. And that's why I don't really want to get bogged down on this. I think that's potentially the one thing that could be subject to a manifest weight standard, that one finding. Excuse me. There's one standard of review on this. Either it's de novo or it's manifest weight, not on the interpretation of the statute, on how the statute is applied. And if it becomes manifest weight – now you've got to tell me why – That was against the manifest weight of the evidence. Because what the Commission failed to do – and it's not surprising because this decision – this case was tried in May of 2009. And then the Commission decision came out in October, the same month as Elmhurst came out. And I was trying to get them to analyze this under whether or not this was recreational. And they didn't have the benefit of the decision. So just like the circuit court, if you analyze this case on whether or not the activity, whether the bullying here is incidental. In fact, there's evidence in the record, people attended this, including my client, the next year and didn't even bowl. So if the purpose is to bowl, why do we have people there that were not bowling? The activity itself is not recreational. Therefore, Section 11 doesn't apply and there's no fact and dispute on that. How about a company baseball team with the name of the company on the back of their shirts and other employees attend the baseball games? Well, you can tell me that on the back of the shirts isn't for advertisement purposes. If the purpose of the event is to just promote the company, it could be. You know, every case is judged on the specific facts of this case. And I certainly could contemplate a situation where employees getting together after work and bowling could be recreational. However, under these facts, that this was a directive from the home office for them to engage in this contest so they could win a Peabody Award, so they could, you know, the National Aware Aids Foundation would carry favor with them, so they'd buy more billboard space from this company which sells billboards or whatever their purposes was. So do you have anything in this record? That's speculation. The one thing you kind of first thing I heard was that there is an association, a charitable association that does outdoor advertising. And Ms. Anderson, the witness from the company, testified that the purpose of the event was to promote Viacom, as in her words, we're quoting the memo from the president of the company, as a socially responsible corporate citizen. That's in page 192 of the record. And she also admits that that would be a benefit. So having established the purpose of the event. The purpose is to promote the company. Exactly. Let's say we concede that. Okay. So that's the end of the issue. Whether or not she voluntarily participates or is assigned or ordered in your analysis has nothing to do with the equation. If the purpose of the event is to promote the company, it's not recreational. Not only that, at that point, if we establish that the purpose of the event, at least in part, at least in part, was to promote the company, now all of a sudden, guess what she is? She's a traveling employee because she had to travel across the city to attend the event. How do you distinguish this from the Gooden? Pardon? How do you distinguish this from the Gooden? Because Gooden was a picnic. Gooden was a picnic where the only potential benefit to the employer was potentially the goodwill of having employees meet and collaborate. There was no advertising of the picnic. They weren't harvesting pictures like they were here to use to promote the company. They didn't have her sign a release, which they had Ms. Kramer sign, indicating that they could use pictures from the bowling event to promote Viacom. None of that. I mean, there's so many different business purposes here. I mean, just look at the name of the event itself was to promote the company. Am I missing something here? The purpose of this was philanthropic to assist the youths who were afflicted with AIDS. Now, what in heaven's name does that have to do with Viacom? Judge, you're not looking at Ms. — you're skipping over Ms. Anderson's testimony. Again, if you look at page 192 of the record in which she concedes that there was a business purpose to the event, namely to portray the company as a socially responsible corporate citizen. Moreover, there's exhibits in the record that show that the company at the time was attempting to use this event and others to campaign for the company to obtain a Peabody Award and other type of acknowledgments. Okay, you've got all of that, but I think what you're wanting to emphasize in your argument is how all of being a good corporate citizen, et cetera, what in the record says that benefits the company is the bottom line? Well, first of all, I don't think I have to prove that. All I have to prove is it was a benefit to the company, and I've got that. I don't know how you prove as far as a specific number. Any time you promote the company, it helps their bottom line, particularly in this case. I thought you said she testified it was a benefit to the company. Correct. Okay, so I guess that's what — Well, Judge, I would say like me taking clients out golfing, you know, can I prove it's going to be in the bottom line? The point is you have evidence there. You have evidence of a company employee that said it benefited the company. I think what I have to prove is they were in the process of attempting to help their bottom line. Whether or not it's successful or not, you know, any form of advertising —  You could say that. To me, that would suggest to me, based upon that example, that the advertising is not the purpose, that that would be incidental to the purpose, which is having an employee softball team, whereas here we have the exact opposite. Here the activity is incidental to the purpose of promoting the company, particularly since there was a mandate that came out from the home office that this was going to be going on everywhere. I think what you need to do when you go back and look at Jewel T and you look at the documents from the employer, you have to ask yourself a simple question. What was the purpose of this event? Was this event a purpose for bowling? This woman had never bowled a day in her life before this happened. It doesn't have to be a purpose for bowling. The purpose wasn't recreation. I think the event is philanthropic in nature. You seem to take the approach that you can have a combined benefit, both promoting the company and having it be philanthropic or charitable. If it had to be one or the other, then every benefit would be anonymous. Justice Harris, I agree with you 100%. I agree with you 100%. All I have to do is show there is some business purpose. That's all I have to show. And if there is some business purpose, again, then because she was traveling at the time, this becomes whether or not it was reasonable. Was it reasonable for her to pick up a bowling ball and fall? Yes. So I'm done. We don't even need to even engage. Hey, excuse me. Playing basketball on the company's basketball team is a recreational activity. Now, are you suggesting that because they have to travel to the basketball stadium, they become traveling employees? No, because under this court's decision, under this court's decision, I think it was the Harris case. As long as engaging in recreation is the sole purpose of the traveling, this court has held that that's an exclusion to the traveling employee doctrine. Counsel, if you've got any time left, I'd get off the traveling employee thing. You ain't going anywhere with that. Again, here, if at least part of the reason was to further the interest of the employer, it's not recreation. She's doing something in the interest and for the benefit of the employer. I'm going to get to my question. If part of the name on the back of the baseball shirt is to advertise the company, now under your theory, that's not recreational, because part of the purpose is to advertise. Is that true, based on what you just said? Again, that's an element. That's one element. You'd have to still look at the other things under Juul T. That's certainly something that would, in newer to that, be potentially of a benefit to the employer. What I said to you before, Justice Hoffman, was if that was all they had, that might not be enough. That might not be enough. But if you take your example, and all of a sudden, the baseball team is playing under a field that says, you know, the name of the employer. Counselor, under your theory, they're all traveling employees, because there's some benefit to the company. And they had to get to the baseball field. And there's some benefit. Potentially, again, if the advertisement is simply incidental and that's all there is, I think that that would be. What if the advertisement is incidental? If the advertisement, having the name of the company, is incidental, the purpose of having, for example, a softball team, that's one example. Do you think Joe's gas station is in the baseball business? Not related. I'm saying if the sole purpose is to recreate, then they're not traveling employees. Sole purpose is to recreate. The court has held that. There's a case on that already. Thank you. Thank you. Can you answer this special question? What do you make of his theme that he is continually advancing, that if there's some ostensible, arguable, business-related purpose to the activity, then obviously whether or not the employee volunteers or not is irrelevant. They must recover. I think it has to be overt and express and clear and unambiguous evidence. And we don't have that here. There's no relationship between Viacom and this particular. Well, is there any testimony that the AIDS Association advertises? Is there any testimony by a company employee that says this is of benefit to the company? The testimony he was referring to, no. And there was no testimony that Beehive took this and then promoted Viacom. And that's what we would need, I think, to really remove this from Section 11. I think even then we have to really be careful, because we want to allow companies to have these recreational events. That's the whole purpose of Section 11. And if they want to bestow their, you know, some money to help out the community that they're in, I think we also want to promote that and not deny that. What was the ostensible purpose of this activity? It was to, it was a favorite charity. And, in fact, it was selected. The employees got to, and this was outside of the evidence, but this was to provide money to this particular local charity. And Ms., the corporate person that testified, Ms. Anderson, stated that the benefit, that the purpose of this was to benefit Beehive, not the corporation. She was asked by counsel that, by the way, this memo that went out about Viacom and Community Day, he wanted this to be successful, that's the chairman, because he wanted to show your company's, quote, unquote, dedication to commitment to excellence and compassion. Isn't that correct? That's what's in the memo. And then counsel goes, well, he wanted Viacom to be a good corporate citizen. And she said, yes, and that would benefit the company. And she goes, well, yes, it would. And that's just like within Goodman. We have touting employees. Is there any evidence presented to contradict Anderson that the purpose was to benefit Beehive? Correct. Any evidence that contradicted that? Yeah, and there's no document that stated, for example, the photographs. Well, that's just so that the employees, because when you use someone's likeness, you can sue them if they use it. What if Beehive wanted just to post photographs? It wouldn't even say that these are Viacom employees. And they put it in their office where people enter. Viacom just wants to make certain that they're not imposing liability upon Beehive. You could just as easily speculate. That's why they just don't want their employees having that opportunity to maybe sue for saying, hey, by the way, you're using my likeness. So there's no business purpose to even that release. It's a general release, too, by the way. And, again, counsel, the closest he comes is to show that there were certain commercials that were charitable, you know, the beneficence of Viacom. And it had nothing to do with Viacom Community Days. It was, I guess it was a public service ad. And he cites that as some type of evidence that we should imply that this activity was being used to promote Viacom and increase their business. You would need someone to have, you know, an express statement saying, yes, our sales would be impacted. They would be, you know, obviously promoted. They would be increased. But just to have this, wow, they're a good corporate citizen is no different than what we see in Gooden. It is no different that, you know, when we're touting our co-employees, it has a benefit to the company. And what I was going to pick up on Justice Hoffman's comment, I was going to state that what if we have this picnic out in a forest preserve, and they have a banner up, and it says, you know, Allstate Company Picnic. I mean, is that advertising now? Are we now saying that, wow, we take this or that away from it? What if Allstate said, hey, we have a little cup here, and we're going to raise some money for the local kid's school? So suddenly that becomes, you know, a business purpose because we have Allstate or Viacom or whatever the company name up there. And then on top of that, and I'm not just saying this. I was going to say, what if they're wearing corporate shirts, you know, to this event? And I don't think it matters that she participated in the bowling event or not. I think the event itself, it's philanthropic, and it's recreational. And whether she physically bowled or not is irrelevant. It is a recreational event. It's a charitable event. And it's all going to see the Cubs play, some of us would claim it would be recreation, but some find it recreation, don't they? Yes. They're not on the field playing. Correct. And that would be a perfect example. That would be a recreational event. And I think the company should be afforded this Section 11 protection to allow their employees to engage in this conduct. Thank you, counsel. Thank you, counsel.